| | | |
|---|---|---|
| DEBORAH E. STANDARD MAERKEL, *Plaintiff*, | | |
| v. | | No. 3:17-cv-00170 (JAM) |
| COMMISSIONER OF SOCIAL SECURITY, *Defendant*. | | |

**RULING ON CROSS MOTIONS TO REMAND AND AFFIRM DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Deborah Standard Maerkel alleges that she is disabled and cannot work because of, among other impairments, hypertension, obesity, posttraumatic arthritis in the left ankle, hypothyroidism, and depression. She filed this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of defendant Commissioner of Social Security, who denied plaintiff's claim for social security disability insurance benefits. For the reasons explained below, I will grant plaintiff's motion for judgment on the pleadings (Doc. #16), which I construe as a motion to reverse or remand the decision of the Commissioner, and I will deny the Commissioner's motion to affirm the decision of the Commissioner (Doc. #19).

**BACKGROUND**

The Court refers to the transcripts provided by the Commissioner. *See* Doc. #14-1 through Doc. #14-12. Plaintiff filed an application for social security disability insurance benefits on August 24, 2015, alleging a disability onset date of June 15, 2013. Plaintiff's claim was initially denied on October 8, 2015, and denied again upon reconsideration on November 12, 2015. She then filed a written request for a hearing on December 8, 2015.

Plaintiff appeared and testified at a hearing before Administrative Law Judge (ALJ) I. K. Harrington on May 18, 2016. Plaintiff was represented by counsel. On June 29, 2016, the ALJ issued a decision concluding that plaintiff was not disabled within the meaning of the Social Security Act. *See* Doc. #14-3 at 18-33. The Appeals Council affirmed the decision of the ALJ on December 9, 2016. Plaintiff then filed this federal action on February 6, 2017.

To qualify as disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with his physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability and to determine whether she qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app.

> 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)-(v). In applying this framework, an ALJ may find a claimant to be disabled or not disabled at a particular step and may make a decision without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; at Step Five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act. At Step One, the ALJ determined that plaintiff last met the insured status requirement of the Social Security Act on March 31, 2015. Doc. #14-3 at 21. Plaintiff had not engaged in substantial gainful activity since June 15, 2013, the date of the alleged onset of her disability. At Step Two, the ALJ found that plaintiff suffered from the following severe impairments: "hypertension, obesity, and post-traumatic arthritis in the left ankle." *Ibid.* The ALJ concluded that plaintiff's medically determinable impairments of hypothyroidism and depression were non-severe. *Id.* at 21-24.

At Step Three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 24.

At Step Four, the ALJ found that, through the date of last insured, plaintiff "had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant is capable of sitting for six hours, and standing and/or walking for one and a half hours. She is capable of occasional pushing and/or pulling and operating of left foot controls. The claimant is further capable of occasional balance, stoop, kneel, crouch, and climb ramps and stairs, but she should never crawl, or climb ladders, ropes, or scaffolds. The claimant should avoid concentrated exposure to extreme cold, heat, fumes, odors, dusts, gases, poor ventilation, and she should not have direct exposure to unprotected heights." *Id.* at 25.

As to plaintiff's credibility, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not consistent with the medical evidence and other evidence in the record." *Id.* at 27.

The ALJ also concluded at Step Four that plaintiff was capable of performing her past relevant work as an account clerk. *Id.* at 30. In reaching this conclusion, the ALJ relied on the testimony of a vocational expert, who the ALJ stated had considered plaintiff's various limitations as described in the residual functional capacity (RFC) finding.

At Step Five, after considering plaintiff's age, education, work experience, and RFC, the ALJ concluded that, through the date of last insured, there were jobs that plaintiff could perform that existed in significant numbers in the national economy. *Id.* at 32. In reaching this conclusion, the ALJ relied on the testimony of the vocational expert. The ALJ ultimately held that plaintiff was not disabled within the meaning of the Social Security Act. *Ibid.*

On December 9, 2016, the Appeals Council affirmed the decision of the ALJ. *Id.* at 2–5. Plaintiff then timely filed this case on February 6, 2017.

Plaintiff challenges the ALJ's conclusions in part at both Step Four and Step Five of the review process. I will consider each challenge in turn.

*Step Four - Determination*

Plaintiff argues that the ALJ erred at Step Four in concluding that she was capable of performing her past relevant work as an account clerk. The ALJ concluded that plaintiff could perform her past work based on the testimony of a vocational expert who classified plaintiff's prior hotel work as sedentary work of an account clerk. To determine if plaintiff could return to such work, the ALJ posed the following hypothetical to the vocational expert regarding someone with the same age, education, and past work experience as plaintiff:

> Further assume such individual is capable of sedentary work with occasional pushing and pulling of left foot controls, occasional balancing, stooping, kneeling, crouching, climbing ramps and stairs. Never crawling, climbing ladders, ropes, or scaffolding. Avoid concentrated exposures to extreme cold, heat, fumes, odors, dusts, gases, poor ventilation, and avoidance of direct exposure to unprotected heights. Can such an individual perform any of the claimant's past work?

Doc. #14-3 at 91. The ALJ's hypothetical did not incorporate any assumption about how long plaintiff would have to sit or stand during the course of a work day. The vocational expert testified in response to the hypothetical that such a person would be able to work as an account clerk as customarily performed and as actually performed.

The ALJ relied exclusively on the testimony of the vocational expert to conclude that plaintiff could work as an account clerk as actually performed and as generally performed. The ruling states that the ALJ asked the vocational expert to consider "a person with the same age, education, and work experience as the claimant, and a residual functional capacity as stated in Finding 5." *Id.* at 31. But the ALJ's hypothetical to the vocational expert did not actually include

plaintiff's full residual functional capacity as stated in Finding 5. Most notably, the ALJ's hypothetical to the expert did not mention that plaintiff is only "capable of sitting for six hours, and standing and/or walking for one and a half hours." *Id.* at 25. In fact, the ALJ did not mention plaintiff's limits regarding sitting, standing, or walking at all.

The limitations on plaintiff's ability to sit and walk/stand are significant and very may well have led the vocational expert to conclude that plaintiff could not perform her past relevant work. Indeed, the expert testified that an individual with the limitations described by the ALJ who was also required to elevate her left leg up to three times a day would be unable to perform "all sedentary work." Doc. #14-3 at 93. In light of this testimony, it is quite possible that if the expert were actually informed of plaintiff's sitting and standing/walking limitations, the expert would have concluded that plaintiff was not capable of performing any of her past relevant work.

Because of the ALJ's significant omission regarding plaintiff's ability to sit/stand in the hypothetical, the vocational expert's testimony regarding the hypothetical person's ability to work as an account clerk cannot provide substantial evidence for the ALJ's conclusion regarding plaintiff's ability to work as an account clerk. *See Hancock v. Barnhart*, 206 F. Supp. 2d 757, 770 (W.D. Va. 2002) (ALJ "committed an error of law when she did not include in her hypothetical to the VE the claimant's inability to sit for 1 ½ hours without changing positions or walking around"). I therefore conclude that the ALJ erred at Step Four by relying on the expert's testimony to find that plaintiff could perform her past work as an account clerk.

### *Step Five - ALJ's RFC finding for a range of sedentary work*

Plaintiff argues that the ALJ erred in finding that she could perform a range of sedentary work at Step Five even though the ALJ had concluded at Step Five that plaintiff's residual functional capacity included a limitation for sitting for six hours and walking/standing for one-

and -a-half hours. Plaintiff argues that because the six hours of sitting and one-and-a-half hours of walking/standing does not total eight hours of working, the ALJ was required to find that plaintiff was disabled as a matter of law. Doc. #14-3 at 25.

For sedentary work, "an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." Titles II & XVI: Determining Capability to Do Other Work—Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, SSR 96-9P, 1996 WL 374185 at *6 (S.S.A. July 2, 1996). Social Security regulations also require the following:

> [T]he full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday. If an individual can stand and walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself, would not cause the occupational base to be significantly eroded. Conversely, a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled sedentary occupational base significantly. For individuals able to stand and walk in between the slightly less than 2 hours and only a few minutes, it may be appropriate to consult a vocational resource.

*Ibid.* Where an ALJ determines that a claimant cannot perform the full range of sedentary work, the ALJ "must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country." *Id.* at *5.

The ALJ in this case concluded that plaintiff was not able to perform a full range of sedentary work because she was impeded by additional limitations, including her limited ability to sit and stand/walk. Doc. #14-3 at 32. The ALJ stated that "[t]o determine the extent to which these limitations erode the unskilled sedentary occupational base . . . the [ALJ] asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." *Ibid.* Relying on

7

the expert's testimony, the ALJ cited examples of specific jobs that plaintiff could do and provided a statement of the incidence of those jobs in the state of Connecticut and in the national economy.

As discussed above, however, the ALJ did not include plaintiff's sitting or standing/walking limitation in the hypothetical to the vocational expert. *See* Doc. #14-3 at 91. Therefore, the ALJ could not properly rely on the vocational expert's testimony that was premised on an incomplete hypothetical. For the same reasons discussed above regarding Step Four, this error was not harmless in light of the expert's later testimony regarding a similar individual who would need to elevate her leg. If the expert had been informed of plaintiff's true residual functional capacity, it is possible that the expert would have testified that such a person would not be capable of performing the three "other work" jobs listed in the ruling. Doc. #14-3 at 32. "If the ALJ asks the vocational expert a hypothetical question that fails to include or otherwise implicitly account for all of the claimant's impairments, then the vocational expert's testimony is not substantial evidence and cannot support the ALJ's conclusion that the claimant can perform significant numbers of jobs in the national economy." *Hernandez v. Berryhill*, 2018 WL 1532609, at *17 (D. Conn. 2018) (citations, brackets, and quotations omitted).

The Commissioner argues that the ALJ did not err because being able to stand and walk for "slightly less than 2 hours" a day is consistent with being able to perform sedentary work. SSR 96-9, 1996 WL 374185. But one-and-a-half hours is not "slightly less" than two hours. Moreover, as discussed above, the regulation makes clear that a standing/walking limitation that is in between a few minutes and slightly less than two hours requires consideration of the extent to which the occupational base is eroded in light of this limitation, and the ALJ did not consider this issue.

The Commissioner further argues that there is extensive evidence in the record that plaintiff could stand/walk for two hours, despite the ALJ's RFC finding of one-and-a-half hours. But my task in an administrative review proceeding is not to make my own findings of fact or invent "a new or different rationale for an administrative agency's decision." *Santiago v. Colvin*, 2016 WL 777905, at *2 (D. Conn. 2016) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94–95 (1943)). The Commissioner invites me to make a *de novo* conclusion about plaintiff's RFC and find that she can stand/walk for two hours, contrary to the ALJ's finding that she can stand/walk for one-and-a-half hours. This kind of *de novo* finding would be improper. Accordingly, I will remand the case for the ALJ to consider this issue in the first instance.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (Doc. #16), which I construe as a motion to reverse or remand the decision of the Commissioner, is GRANTED. The Commissioner's motion to affirm the decision of the Commissioner (Doc. #19) is DENIED. The case is remanded to the Commissioner for further proceedings consistent with this opinion. On remand, the ALJ should also be sure to address the other concerns raised by plaintiff in her briefing in this case.

It is so ordered.

Dated at New Haven this 19th day of April 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge